UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH DEMAZZEON BLAKE,

    Petitioner,                                    Hon. Gordon J. Quist

v.                                                   Case No. 1:14-CV-1072

PAUL KLEE,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on Blake's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Blake's petition be **denied**.

**BACKGROUND**

        On October 17, 2011, Petitioner, then sixty-nine (69) years of age, pleaded guilty to First Degree Criminal Sexual Conduct for engaging in an "act of sexual intercourse" with a 12 year-old girl. (Plea Transcript, October 17, 2011 at PageID.127-29). Petitioner had previously been convicted of First Degree Criminal Sexual Conduct. (Plea Transcript, October 17, 2011 at PageID.127-29). Under Michigan law, if a sexual assault "is committed by an individual 17 years of age or older against an individual less than 13 years of age," the punishment is "imprisonment

1

for life or any term of years, but not less than 25 years." Mich. Comp. Laws § 750.520b(2)(b). Thus, Petitioner faced the possibility of a minimum sentence of not less than 25 years and a maximum sentence of life in prison.

In return for Petitioner's agreement to plead guilty, the prosecutor agreed not to charge Petitioner with being an habitual felon and to also defer to the trial court regarding Petitioner's sentence, "including whether the court desires to do a downward departure." (Plea Transcript, October 17, 2011 at PageID.127-29). Petitioner was subsequently sentenced to serve 30 months to 20 years in prison. (Sentencing Transcript, December 6, 2011 at PageID.131-33). The prosecution subsequently moved to set aside Petitioner's guilty plea on the ground that given the age of Petitioner and his victim, the trial court "had no authority to impose a minimum sentence of less than 25 years." (ECF No. 8-9 at PageID.218-22).

The trial court granted the prosecution's motion and Petitioner's initial guilty plea and sentence were set aside. (ECF No. 8-9 at PageID.223). Petitioner subsequently agreed to plead guilty to first degree criminal sexual conduct in return for an agreement by the prosecution to not charge Petitioner as an habitual offender. (Plea Transcript, July 26, 2012 at PageID.135). The prosecution further agreed to amend the charge against Petitioner to exclude the allegation that Petitioner was 17 years of age or older, thus permitting the court to sentence Petitioner to a term of imprisonment shorter than the 25 year minimum otherwise required by Michigan law.[1] (ECF No. 8-9 at PageID.246; ECF No. 8-10 at PageID.292). Petitioner and the prosecution further stipulated to the imposition of a 10-25 year prison sentence. (Plea Transcript, July 26, 2012 at PageID.136).

---

[1] If Petitioner's age was not taken into account, Michigan law did not mandate a specific minimum sentence, but instead provided only that a defendant be sentenced to prison "for life or for any term of years." *See* Mich. Comp. Laws § 750.520b(2).

Petitioner was subsequently sentenced to serve 10-25 years in prison consistent with the plea agreement. (Sentence Transcript, August 14, 2012 at PageID.140-41).

Several months later, Petitioner moved to withdraw his guilty plea on the ground that it was "constitutionally invalid, for reasons including, but not limited to, lack of correct advice at the plea hearing, from those whose duty it was to ensure an understanding and constitutionally valid plea." (ECF No. 8-9 at PageID.225-26). The trial court denied Petitioner's motion concluding that Petitioner "was aware of the consequences of his plea" and "received the exact benefit of his agreement." (ECF No. 8-9 at PageID.227-29). Petitioner subsequently appealed the matter to the Michigan Court of Appeals asserting the following claims:

> I. Mr. Blake is entitled to plea withdrawal where the plea was not voluntarily made with a full understanding of the direct consequence of the penalty, in violation of the state and federal due process clauses.
>
> II. Defendant must be allowed to withdraw his plea because his attorney was ineffective as to advising him of the consequences of his plea in violation of the United States Constitution.

The Michigan Court of Appeals granted Petitioner relief pursuant to an Order which, in its entirety, reads as follows:

> Pursuant to MCR 7.205(D)(2), in lieu of granting the delayed application for leave to appeal, the Court VACATES the August 14, 2012 judgment of sentence. The trial court imposed an unlawful 10-year minimum sentence. Where, as here, a defendant is convicted of first-degree criminal sexual conduct, the victim is under the age of 13 years, and the defendant is 17 years or older, MCL 750.520b(2)(b) mandates the imposition of a sentence of life imprisonment or a minimum term of 25-years. The age of the defendant is not an element of the crime charged, or a variable that may, or may not, be alleged. Rather, it is an element that must be taken into account at sentencing pursuant to the requirements of MCL 750.520b(2). This

> matter is REMANDED to the trial court to allow defendant to withdraw his plea. Defendant's guilty plea was not voluntarily and knowingly entered, and trial counsel rendered ineffective assistance of counsel, where defendant was not advised at the plea-taking that the sentencing agreement was unlawful and that he was subject to the imposition of a 25-year minimum sentence or life imprisonment, and lifetime electronic monitoring. This order has immediate effect. We do not retain jurisdiction.

*People v. Blake*, Case No. 315676, Order (Mich. Ct. App., May 15, 2013) (citations omitted).

The Michigan Supreme Court, however, reversed this determination by way of the following Order:

> On order of the Court, the application for leave to appeal the May 15, 2013 order of the Court of Appeals is considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we REVERSE the order of the Court of Appeals and we REMAND this case to the Kent Circuit Court for reinstatement of the August 14, 2012 judgment of sentence. Defendant received the exact minimum and maximum prison terms for which he bargained, and he expressly stated on the record that lifetime electronic monitoring was of no concern to him. Consequently, the defendant's guilty plea was not rendered involuntary or unknowing by the failure of either the trial court or defense counsel to inform him of a mandatory minimum sentence, and he is not entitled to withdraw his guilty plea.

*People v. Blake*, Case No. 147385, Order (Mich., Nov. 6, 2013).

On October 15, 2014, Petitioner initiated the present action in which he asserts the sole claim that he is entitled to relief because his "plea is illegal." (ECF No. 1 at PageID.5). Petitioner requests that this Court "reverse his plea based conviction and Order the State to reinstate its first plea and sentence." (ECF No. 1 at PageID.14).

4

**STANDARD OF REVIEW**

Blake's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect

that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999).  The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411.  Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable.  *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.  Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context."  *Ayers*, 623 F.3d at 307.  Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary."  *Ayers*, 623 F.3d at 308.  Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds

unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where

state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

**I.        Voluntariness of Guilty Plea**

Petitioner asserts that the trial court's failure to inform him of the penalties he faced if he pleaded guilty renders his subsequent guilty plea involuntary. Specifically, Petitioner argues that the trial court failed to properly inform him of two consequences of his plea: (1) that he faced lifetime electronic monitoring; and (2) that he faced a minimum sentence of 25 years in prison.

A guilty plea is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Following a guilty plea "nothing remains but to give judgment and determine punishment." *Id.* By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers. *Id.* at 243. To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

The *Boykin* Court identified certain rights (identified immediately above) which a criminal defendant waives by pleading guilty. While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, the Court did not hold that a guilty plea is valid only

where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44. In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58. With respect to its *Boykin* decision, the Court clarified its significance stating that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4.

Accordingly, as other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See, e.g., Threadgill v. Galaza*, 2006 WL 2084165 at *3 (E.D. Cal., July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992 WL 129284 at *3 (9th Cir., June 4, 1992) ("*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 at *6-7 (D. Conn., Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea will not be invalidated simply because of the district court's failure. . .to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, 1990 WL 92601 at *2 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among

9

the alternative courses of action open to the defendant").

Accordingly, the relevant question is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading guilty. Rather, the question is whether Petitioner's decision to plead guilty was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 Fed. Appx. 22, 23 (6th Cir., Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Determining whether a guilty plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

The terms of the plea bargain were described on the record. (Plea Transcript, July 26, 2012 at PageID.135-37). Petitioner was informed that he was agreeing to plead guilty to First Degree Criminal Sexual Conduct and that the possible prison sentence for such was "life in prison or any term of years." (Plea Transcript, July 26, 2012 at PageID.136). Petitioner stated that he understood that he was agreeing to the imposition of a sentence of 10-25 years in prison. (Plea Transcript, July 26, 2012 at PageID.136-37). Petitioner acknowledged that he had received an Advice of Rights form describing all the various rights he would be surrendering by pleading guilty. (Plea Transcript, July 26, 2012 at PageID.136). Petitioner stated that he discussed the matter with his attorney and understood, and was agreeing to waive, the rights described therein. (Plea Transcript, July 26, 2012 at PageID.136). Petitioner stated that it was his decision to plead guilty and that he had not been threatened or received anything other than what was discussed on the record. (Plea Transcript, July 26, 2012 at PageID.136-37). Petitioner nevertheless argues that his

plea suffers from two fatal shortcomings. As discussed below, the Court is not persuaded.

### A. Lifetime Electronic Monitoring

Petitioner argues that the trial judge, during the second plea hearing, failed to inform him that he would be subject to lifetime electronic monitoring if he plead guilty. Under Michigan law, any person convicted of First Degree Criminal Sexual Conduct shall be subject to "lifetime electronic monitoring." *See* Mich. Comp. Laws § 750.520b(2)(d). At the first plea hearing, Petitioner was clearly and unequivocally informed that if he pleaded guilty the penalties included "lifetime electronic monitoring." (Plea Transcript, October 17, 2011 at PageID.127).

As previously noted, prior to the second plea hearing the prosecution agreed to amend the charge against Petitioner to exclude the allegation that Petitioner was 17 years of age or older, thereby permitting the court to sentence Petitioner to a term of imprisonment shorter than the 25 year minimum otherwise required by Michigan law. As a result, the trial judge and the attorneys were uncertain whether a conviction of this modified charge would subject Petitioner to lifetime electronic monitoring.[2] The relevant exchange was as follows:

> The Court: This charge of criminal sexual conduct in the first degree is a felony; and the maximum sentence, if I accept your plea of guilty to it, is life in prison or any term of years. Also,

---

[2] As the trial judge observed in his decision denying Petitioner's motion to withdraw his plea, this uncertainty resulted from an ambiguity as to whether the lifetime electronic monitoring requirement applied to *all* convictions for First Degree Criminal Sexual Conduct or only those where it was alleged that the victim was under the age of 13 and the perpetrator was 17 years of age or older. *People v. Blake*, Case No. 11-643-FC, Opinion and Order at 2 n.1 (Kent County Cir. Ct., Mar. 26, 2013). This ambiguity was arguably resolved by the Michigan Court of Appeals only two months prior to Petitioner's second plea hearing. *See People v. Brantley*, 823 N.W.2d 290, 295-97 (Mich. Ct. App. 2012). As the trial judge further noted, "[s]till, *Brantly* (sic) was only recently decided and the Court (as well as the attorneys) could not immediately state with confidence at the plea hearing how the law would be applied to defendant's case." *People v. Blake*, Case No. 11-643-FC, Opinion and Order at 2 n.1 (Kent County Cir. Ct., Mar. 26, 2013).

> there would be mandatory AIDS and sexually-transmitted-disease testing and counseling.
>
> Is there lifetime electronic monitoring required in this, do you know?
>
> Mr. Clapp: I don't believe so, your Honor, but - -
>
> The Court: Do you agree with that, Mr. Earley?
>
> Mr. Earley: I simply don't know, your Honor.
>
> The Court: Okay.
>
> Mr. Clapp: If the Court wishes to advise him of that, that's fine.
>
> The Court: I don't know if it applies or not. Does it matter to you, Mr. Blake?
>
> Defendant: No, sir.
>
> The Court: All right. So do you understand the - the charge and the potential penalties here?
>
> Defendant: Yes, your Honor.

(Plea Transcript, July 26, 2012 at PageID.136).

With respect to this particular issue, the trial court rejected Petitioner's claim that he was not properly informed that he would be subject to lifetime electronic monitoring:

> Defendant's argument related to lifetime monitoring raises a somewhat closer question, but the result is the same. That is, defendant has also not shown that the uncertainty at the second plea hearing regarding lifetime electronic monitoring rendered his plea unknowing or involuntary. Again, defendant was initially sentenced to lifetime monitoring. During the second plea hearing, which addressed withdrawal of the prior plea and entry of the new one, defendant was advised that lifetime monitoring may also apply to his new sentence. The Court and the attorneys involved were not certain

12

> whether this would apply to the new second count given that the allegation regarding defendant's age was not included in that count. In light of this uncertainty, defendant's trial counsel suggested at the plea hearing that he would be fine with the Court simply advising defendant that it would apply. Rather than advise defendant that it would apply when there was some uncertainty, the Court decided to be open about it. Defendant was told that the Court was not sure whether or not it applied and defendant was asked whether it mattered to him. Defendant stated it did not. If there were any indication whatsoever that it mattered to defendant or his trial counsel, then the Court would not have hesitated to stop the proceedings and try to resolve the issue. There was no such indication. It should also be remembered that defendant was technically still sentenced with lifetime monitoring at that point and had been advised of it applying during the first plea hearing and first sentencing. Defendant was well aware that lifetime monitoring could be ordered, yet it was apparently not a part of the continuing plea discussions which led to the second plea hearing.
>
> Lifetime electronic monitoring is a direct consequence of a conviction and a defendant must be advised of such when a plea is taken in order for it to be considered knowing and voluntary. In this case, defendant was advised that it applied when making his first plea, that it may apply to his second plea, and that counsel and the Court were uncertain at that time whether it would apply for certain. Defendant was asked whether it mattered to him, and he responded unequivocally that it did not. Neither trial counsel nor defendant objected or raised any concerns. Perhaps the Court could have told defendant it applied despite the uncertainty, or delayed the proceedings to research the issue even though everyone was clearly aware of uncertainty and no one expressed the slightest concern. However, under these circumstances, the Constitution did not compel one of those choices. In a case such as this, "the crucial question is whether the defendant's plea was knowing and voluntary, not whether the trial court has engaged in a letter-perfect 'talismanic chant.'" Defendant was aware of the consequences of his plea, including the distinct possibility of lifetime electronic monitoring, and he represented to the Court that such possibility did not matter to him. Indeed, even now, there does not seem to be any suggestion that it actually did matter to him. When viewed in proper context, the transcript of the plea hearing reveals a plea that was made knowingly and voluntarily.

*People v. Blake*, Case No. 11-643-FC, Opinion and Order at 2-3 (Kent County Cir. Ct., Mar. 26,

2013) (footnotes and citations omitted).

### B. Potential Minimum Sentence

Petitioner also argues that his plea is invalid because the trial judge did not correctly inform him of the possible sentence he faced. Specifically, Petitioner argues that just as was the case following his initial guilty plea, he is subject to a minimum prison sentence of 25 years. As discussed above, Petitioner was initially charged with sexually assaulting a 12 year-old girl. Because Petitioner was also charged with being over the age of 17, he was subject to the mandatory 25 year minimum sentence provided by Michigan law. After the impropriety of Petitioner's initial sentence was recognized, the charge against Petitioner was amended to omit the allegation that Petitioner was 17 years of age or older, thus permitting the court to sentence Petitioner to a term of imprisonment shorter than the 25 year minimum otherwise required by Michigan law.

Petitioner's argument is premised upon the conclusion by the Michigan Court of Appeals, noted above, that Petitioner's age is a fact that must be taken into account at sentencing regardless how the prosecution articulated the charge against Petitioner. While the reasoning of the Michigan Court of Appeals on this question is not unpersuasive, this Court cannot simply ignore the fact that the interpretation posited by the Michigan Court of Appeals was rejected, if only implicitly, by the Michigan Supreme Court. Alleged errors by a state court regarding the interpretation of state law cannot form the basis for habeas relief in a federal court. *See, e.g.,* 28 U.S.C. § 2254; *May v. Meko*, 2013 WL 3733458 at *3 (E.D. Ky., July 15, 2013) ("issues involving a state court's interpretation of state law are not cognizable on federal habeas review"); *McKinnon v. Lafler*, 2009 WL 2922316 at *2 (W.D. Mich., Sept. 9, 2009) (same).

The Michigan Supreme Court affirmed the trial judge's decision that Petitioner's decision to plead guilty was made knowingly, voluntarily, and intelligently. In light of the authority and evidence identified above, the Court concludes that this determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.        Ineffective Assistance of Counsel**

Petitioner also argues that his trial attorney's performance was deficient because his attorney failed to properly inform him that he faced a mandatory minimum sentence of 25 years in prison if he plead guilty.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 562 U.S. at 121 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 562 U.S. at 121 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 562 U.S. at 121-22 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's

allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 562 U.S. at 122 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 562 U.S. at 122 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

In the context of a guilty plea, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415 (6th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). Thus, to establish prejudice in the context of a guilty plea, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also*, *Lafler v. Cooper*, 132 S.Ct. 1376, 1384-85 (2012) (quoting *Hill*, 474 U.S. at 59).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 562 U.S. at 122. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

16

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo*, 562 U.S. at 122-23 (internal citations omitted).

Petitioner's claim fails for two fundamental reasons. First, as discussed above, Petitioner did not face a mandatory minimum sentence of 25 years. Thus, his attorney could not have been deficient for failing to advise Petitioner of such. Second, Petitioner has not, for good reason,[3] argued that he wants to set aside his guilty plea and proceed to trial.

The Michigan Supreme Court rejected Petitioner's ineffective assistance of counsel claim. In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

---

[3] If Plaintiff's plea were invalidated and this matter resolved at trial, Petitioner would likely be tried as a 69 year-old man who sexually assaulted a 12 year-old girl which, upon conviction, would subject Petitioner to a mandatory 25 year prison sentence. In this respect, the Court notes that at a hearing before the trial court regarding Petitioner's motion to withdraw his guilty plea, Petitioner acknowledged that he was not arguing that he was innocent of the crime in question. (Motion Transcript, March 22, 2013 at PageID.144). Thus, Petitioner's failure to argue that he wishes to proceed to trial in this matter is understandable.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Blake's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  February 8, 2017

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge